## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| Sherri Legrand, individually and as a representative of the classes, | ) Case No. 1:15-cv-02091 |
| | ) |
| | ) Hon. Donald C. Nugent |
| Plaintiff, | ) Magistrate Judge Thomas Parker |
| v. | ) |
| | ) |
| IntelliCorp Records, Inc., and | ) **PLAINTIFF'S MOTION FOR** |
| The Cato Corporation, | ) **PRELIMINARY APPROVAL OF** |
| | ) **CLASS ACTION SETTLEMENT** |
| Defendants. | ) **WITH INTELLICORP** |

Pursuant to Fed. R. Civ. P. 23, Plaintiff Sherri Legrand, by and through her counsel, hereby respectfully moves the Court for an Order granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement with IntelliCorp, and (1) certifying the Settlement Class for settlement purposes, (2) appointing Plaintiff as Class Representative and her counsel as Class Counsel, (3) approving the Class Notice for distribution, and (4) scheduling a Final Fairness Hearing.

Defendant IntelliCorp Records, Inc. does not oppose this Motion.

**MEMORANDUM IN SUPPORT**

**TABLE OF CONTENTS**

STATEMENT OF ISSUES .................................................................................................... v

SUMMARY OF ARGUMENT .............................................................................................. v

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 1

I.   PROCEDURAL HISTORY .............................................................................................. 1

II.  SUMMARY OF THE PLAINTIFF'S SETTLED CLAIMS ............................................ 2

III. THE SETTLEMENT AGREEMENT ............................................................................... 4

    A.  Overview of Terms ................................................................................................. 4

    B.  Form of Notice ........................................................................................................ 6

    C.  Opt-Outs and Objections ........................................................................................ 7

    D.  Attorneys' Fees, Costs, and Class Representative Service Award ......................... 7

ARGUMENT .......................................................................................................................... 8

I.   THE SETTLEMENT TERMS ARE FAIR, REASONABLE, AND ADEQUATE ......... 8

    A.  The Proposed Settlement was Reached after exchange of Substantial Information, Motion Practice, and Arms-Length Negotiations between Experienced Counsel ..................... 9

    B.  The Settlement is Well Within the Range of Approval ......................................... 11

        1.  Recovery for the Class is Substantial ............................................................. 11

        2.  Plaintiff Faces Significant Risks in the Absence of Settlement ..................... 13

II.  CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ..................... 14

    A.  The Prerequisites of Rule 23(a) are Met ............................................................. 14

1. The Proposed Settlement Class Meets the Numerosity Requirement ........................ 14

2. The Settlement Class Shares Common Questions of Law and Fact ..................... 15

3. The Named Plaintiff's Claims Are Typical ............................................ 16

4. The Class Representative's Interests are Aligned with Those of the Settlement Class, and the Class Representative will Vigorously Represent the Class through Qualified Counsel ........................................................................... 16

B. The Prerequisites of Rule 23(b) are Met ............................................ 17

1. Common Questions of Law or Fact Predominate ..................................... 17

2. A Class Action is the Superior Vehicle for Adjudication ......................... 18

III. THE COURT SHOULD APPROVE DISSEMINATION OF THE CLASS NOTICE ...................... 19

CONCLUSION .......................................................................... 20

## **TABLE OF AUTHORITIES**

Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................. 14, 17, 18

*In Re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996) .............................................. 16

*Ashby v. Farmers Ins. Co. of Or.*, 592 F. Supp. 2d 1307 (D. Or. 2008) ........................ 11

*Bach v. First Union Nat. Bank*, 149 F. App'x 354 (6th Cir. 2005) ................................ 11

*Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565 (6th Cir. 2004) ................................. 15

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007) ............................................ 16

*Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702 (6th Cir. 2009) ................................. 13

*Bert v. AK Steel Corp.*, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) .......................... 10

*Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201 (E.D. Pa. 2011) ................... 14, 18

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) .................................... 12

*Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am.*, 803 F.2d 878 (6th Cir. 1986) 9

*Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026 (6th Cir. 1977) ................................ 16

*Dalton v. Capital Associated Indus.*, 257 F.3d 409 (4th Cir. 2001) .............................. 13

*In re Farmers Ins. Co., Inc., FCRA Litig.*, 741 F. Supp. 2d 1211 (W.D. Ok. 2010) ...... 11

*In Re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330 (N.D. Ohio 2001) ............ 10

*Int'l Union, United Auto., Aero., & Agr. Impl. Workers of Am. v. Ford Motor Co.*, 2008 WL
4104329 (E.D. Mich. Aug. 29, 2008) ........................................................................... 11

*Int'l Union, United Auto., Aero., & Agr. Impl. Workers of Am. v. Gen. Motors Corp.*, 497 F.3d
615 (6th Cir. 2007) ...................................................................................................... 9, 20

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001) ...................................... 10

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) .............................. 20

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) .................................................. 19

*Olden v. LaFarge Corp.*, 383 F.3d 495 (6th Cir. 2004) ........................................................... 18

*In re Packaged Ice Antitrust Litig.*, No. 08-md-1952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ......................................................................................................................... 8

*Patel v. Trans Union, LLC*, 308 F.R.D. 292 (N.D. Cal. 2015) ................................................... 15

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ..... 10

*Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592 (6th Cir. 2007) ................. 18

*Ramirez v. Trans Union, LLC*, 301 F.R.D. 408 (N.D. Cal. 2014) ............................................. 15

*Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241 (E.D. Pa. 2011) ......................................... 14

*Rosiles-Perez v. Superior Forestry Serv., Inc.*, 250 F.R.D. 332 (M.D. Tenn. 2008) ... 15, 16, 18

*Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604 (6th Cir. 2016) ............................... 13

*Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183 (E.D. Va. 2015) ................................... 15

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) ................................................. 16

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559 (6th Cir. 2001) .................... 8

*Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521 (E.D. Ky. 2010) .............. 10

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) ........................................................... 8, 10

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012) ......................................... 19

<u>Rules & Statutes</u>

15 U.S.C. § 1681, *et seq.* .................................................................................................. *passim*

Fed. R. Civ. P. 23 ........................................................................................................... *passim*

## STATEMENT OF ISSUES

Whether the settlement between Plaintiff and Defendant IntelliCorp Records, Inc. should be preliminarily approved and notice distributed to the Settlement Class.

## SUMMARY OF ARGUMENT

The Court should grant preliminary approval of the Parties' settlement because it is fair, reasonable, and adequate.  The Settlement Agreement was reached only after two mediation sessions with third-party neutrals, fulsome exchange of information, detailed analysis of class data by Plaintiff, and motion practice.  Attorneys' fees and the Class Representative service payment were not discussed or negotiated until all other material terms had been agreed upon. Furthermore, the Parties are represented by experienced counsel.  The settlement is reasonable, especially in light of the hurdles remaining between Plaintiff and a final judgment.  Here, Settlement Class Members will receive automatic monetary payments and the settlement also provides meaningful non-monetary relief that would not have been available to the Settlement Class in litigation.

The Settlement Class meets the prerequisites of Fed. R. Civ. P. 23 and should be certified for settlement purposes only.  (1) The Class is numerous as it is approximately 4,791 members; (2) there are a number of common questions of law and fact related to IntelliCorp's conduct; (3) Plaintiff's claims are typical as she has the same claims as the Class, specifically that IntelliCorp's alleged failure to follow reasonable procedures to assure maximum possible accuracy in generating reports and maintain strict procedures to ensure that reports were complete and up to date lead to incomplete and inaccurate reporting of public record information which violated Plaintiff and Class Members' rights under the FCRA; and (4) Plaintiff and her Counsel are adequate to represent the Class, as Plaintiff has been actively engaged throughout

litigation and has no conflicts of interest with the Class, and Counsel is highly experienced in complex class actions, particularly those regarding the FCRA.  Further, there are common class-wide issues that predominate over any individual concerns regarding the questions of whether IntelliCorp's failure to maintain reasonable and strict procedures violated the FCRA, and whether IntelliCorp's failures were willful.  As the claims of all Class Members are identical and are based on a common core of facts, but involve a modest amount of damages, it is clear that a class action is the superior method of adjudicating this matter.

The proposed Class Notice, which will be sent via U.S. mail to all Settlement Class Members and is based on the Federal Judicial Center's class action model notice, contains all information required by Fed. R. Civ. P. 23, and should be approved for distribution.

## INTRODUCTION

Plaintiff Sherri Legrand ("Plaintiff"), individually and on behalf of the Settlement Class,[1] seeks preliminary approval of a proposed settlement of Plaintiff's claims against Defendant IntelliCorp Records, Inc. ("IntelliCorp") for alleged violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").   The Settlement Agreement between Plaintiff and IntelliCorp (collectively herein the "Parties"), if approved, will resolve all claims of Plaintiff and the members of the Settlement Class ("Settlement Class" or "Settlement Class Members") in exchange for substantial monetary and non-monetary benefits.

Accordingly, Plaintiff requests that the Court: (1) preliminarily approve the proposed Settlement Agreement, (2) certify the Settlement Class for settlement purposes only, (3) appoint Plaintiff as Class Representative, (4) appoint Plaintiff's Counsel as Class Counsel, (5) direct notice to be distributed to the Settlement Class, and (6) schedule a final approval hearing.

## BACKGROUND

### I.  PROCEDURAL HISTORY.

On September 4, 2015, Plaintiff filed her initial complaint in the Court of Common Pleas, Cuyahoga County, alleging that IntelliCorp and Defendant The Cato Corporation ("Cato")[2] had failed to comply with the FCRA.  (ECF No. 1-1.)  IntelliCorp, with the consent of Cato, removed the action to this Court on October 8, 2015.  (ECF No. 1.)  On October 15, 2015, IntelliCorp moved to strike and dismiss claims alleged against it in the initial complaint.  (ECF No. 9.)  In response, Plaintiff filed her First Amended Class Complaint ("FAC") (ECF No. 11), which

---

[1] Unless otherwise explicitly defined herein, all capitalized terms have the same meanings as those set forth in the Parties' Settlement Agreement, attached to the Declaration of E. Michelle Drake ("Drake Decl.") as Exhibit 1.

[2] The Parties' settlement does not involve or effect Plaintiff's claims against Cato in any way, thus this Memorandum focuses solely on the litigation and claims against IntelliCorp.

reasserted the claims in the initial complaint and added further detailed factual allegations.  On November 18, 2015, IntelliCorp moved to strike and dismiss claims asserted in the FAC (ECF No. 13), which the Court denied on March 24, 2016 (ECF No. 38).  IntelliCorp also moved to stay the action pending the United States Supreme Court's decision in *Spokeo, Inc. v. Robins*, No. 13-1339, on March 18, 2016 (ECF No. 35), which the Court denied on April 7, 2016 (ECF No. 43).

On September 28, 2016, the Parties attended a full day mediation with Hon. Wayne R. Andersen (Ret.) of JAMS, which Cato also participated in.  Prior to the mediation, Plaintiff thoroughly analyzed class data provided by IntelliCorp (discussed in further detail below) and the Parties exchanged detailed mediation briefs.  (Drake Decl. ¶ 3.)  No settlement was reached at the mediation, but the Parties believed that further discussions would be productive and agreed to further exchanges of information.  (*Id*.)  Following these information exchanges and further analysis of class data, and Plaintiff engaging in third-party discovery regarding IntelliCorp's Government Sanctions sources, the Parties scheduled a second mediation.  (*Id.* ¶ 4.)  The Parties attended a full day mediation with neutral Rodney Max of Upchurch Watson White & Max on February 2, 2017.  The Parties again exchanged detailed briefs prior to the mediation.  (*Id.*)  At the end of the February 2017 session, the Parties agreed to a settlement in principle and executed a terms sheet.  (*Id.*)  Through subsequent negotiations, the Parties reached a class-wide resolution formalized in the Settlement Agreement presented with the instant Motion.  (*Id.*, Ex. 1.)

## II.    SUMMARY OF THE PLAINTIFF'S SETTLED CLAIMS.

IntelliCorp is a consumer reporting agency as defined by the FCRA.  In September 2013, IntelliCorp issued a report on Plaintiff to her prospective employer (Cato).  Plaintiff alleges that under the heading "Government Sanctions," the report inaccurately labeled her as being

sanctioned by the federal government and included on the Department of Health and Human Services' List of Excluded Individuals and Entities ("LEIE").[3] (FAC ¶¶ 38, 40-42.) Plaintiff alleges that IntelliCorp had matched her with two different people who were on the LEIE, neither of whom are Plaintiff, despite having all the identifying information regarding Plaintiff required to verify that she was not in fact on the LEIE. (*Id.* ¶¶ 46-53.) Plaintiff's report stated that a "Sherri Smith" who resides in Pennsylvania and a "Sherrie Smith" who resides in Rochester, New York, were on the LEIE – Plaintiff alleges that she has never resided in either location, nor has she ever gone by those names. (*Id.*) Further, the dates of birth and social security numbers for the individuals on the LEIE do not match Plaintiff's. (*Id.* ¶¶ 52, 54.) Plaintiff alleges that IntelliCorp did not send Plaintiff notice that it was reporting public record information about her at the time it furnished the report to Cato. (*Id.* ¶ 39.) Plaintiff alleges that IntelliCorp also omitted items of available public record information from its report on Plaintiff, such as the dates of birth.

Plaintiff asserted claims against IntelliCorp on behalf of herself and class members involving two provisions of the FCRA. First, Plaintiff alleges that IntelliCorp violated 15 U.S.C. § 1681e(b) by failing to follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *Id.* These allegedly unreasonable procedures included failing to verify that the identity of the individuals on whom IntelliCorp reported records matched the identity of the consumer by verifying that social security numbers matched, and failing to verify that records reported were in fact for the consumer when the reported record contained a different name or an address where other

---

[3] This List is of individuals who are excluded by the Department from participation in federal healthcare programs because they have attempted to defraud a federal health care program or committed other crimes. (FAC ¶¶ 40-42.)

documents indicated the consumer had never lived.  Second, Plaintiff alleges that IntelliCorp violated 15 U.S.C. § 1681k(a) by not providing contemporaneous notice to Plaintiff and other consumers that it was reporting public record information about them and by not maintaining "strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date."  *Id.*  Specifically, Plaintiff alleges that IntelliCorp failed to include personally identifying information about the individual whose record was being reported as a match, such as full name and social security number, that would have allowed the individual reviewing the report to discern that the reported record did not match the consumer who was the subject of the report.  Plaintiff sought statutory damages for IntelliCorp's willful violations of the FCRA.  15 U.S.C. § 1681n.

IntelliCorp provided data about the reports it produced during the Class Period containing Government Sanction information.  Specifically, for each report Defendant provided the personal identifying information of the consumer and the content of the Government Sanctions information reported.  Plaintiff's analysis of the class wide data representing over 4,000 government sanctions reports and discovery provided by IntelliCorp revealed that in July 2013, IntelliCorp began using a different database for obtaining its Government Sanctions information, specifically the System for Award Management ("SAM") database compiled by General Services Administration. After noticing an increase in the number of disputes related to reporting of Government Sanctions information, IntelliCorp ceased using the SAM database in November 2013, nearly two years before this suit was filed.

## III.  THE SETTLEMENT AGREEMENT.

### A.  Overview of Terms.

The Settlement Class is defined as:

> All individuals who were the subjects of consumer reports furnished by IntelliCorp which contained public record information in the "Government Sanctions" section of the report on or after September 4, 2013, and continuing through March 31, 2017.  Excluded from this Class are any individuals who have previously released their claims against IntelliCorp.

(*Id.*, Ex. 1 ¶ 1.19.)  The proposed Settlement Class consists of approximately 4,791 members.  In consideration for the release of the Settlement Class Members' claims, IntelliCorp has agreed to provide significant non-monetary and monetary relief.

As to non-monetary relief, IntelliCorp has agreed to provide one free consumer report to each of the Settlement Class Members with an updated Government Sanctions search.  (*Id.* ¶ 2.2.)  IntelliCorp has further agreed that, for a period of five (5) years from the Effective Date of the settlement, if IntelliCorp furnishes a report on a Settlement Class Members that contains information relating to Government Sanctions, it will conduct a manual of review the report prior to furnishing it.  (*Id.* ¶ 2.3.)  Also for a period of five (5) years from the Effective Date, IntelliCorp will verify any Government Sanctions hit records during the preparation of consumer reports at the source, and prior to utilizing any new or additional databases as a source of Government Sanctions information, it will conduct a special audit of such database.  (*Id.* ¶ 2.4.)

Second, IntelliCorp will pay $1,100,000.00 as part of a common settlement fund.  (*Id.* ¶ 3.1.)  In no circumstance will any portion of this fund revert to IntelliCorp.  After any Court-approved deductions for attorneys' fees, costs, and Class Representative service award, the entire remaining fund will be distributed *pro rata* to all Settlement Class Members who do not exclude themselves.  (*Id.* ¶ 3.2.)  Should any funds remain after the close of the check negotiation period, then those funds will be donated to the Parties' designated charitable *cy pres* recipient, Impact Fund.  (*Id.* ¶¶ 1.6, 3.6.)  IntelliCorp, with the consent of Plaintiff's Counsel, has selected

American Legal Claim Services to act as the third party claims administrator.  IntelliCorp will pay the costs of administration separate from the common fund.  (*Id.* ¶ 3.5.)

### B.  Form of Notice.

The Parties have agreed to the form of notice attached to the Settlement Agreement as Exhibit A.  This notice program meets the requirements of Fed. R. Civ. P. 23(c)(2)(B).  Pursuant to the Agreement, all Settlement Class Members will be sent a Long Form Notice via first class U.S. mail at their last known address as updated by the U.S. Postal Service's National Change of Address System and any other appropriate proprietary software the Settlement Administrator utilizes.  (Drake Decl., Ex. 1 ¶¶ 4.1, 4.2.)  The Long Form Notice will contain detailed information about the settlement and is based on the Federal Judicial Center's model notice (*see* www.fjc.gov).  (Drake Decl., Ex. 1 at Ex. A.)  Further, the Notice will inform Settlement Class Members how to obtain additional information about the settlement, including the URL for the Settlement Website and a toll-free telephone number to contact the Settlement Administrator, and deadlines by which to take action should they so choose.  (*Id.*)

The Settlement Administrator will also run the Settlement Website, which will contain the Long Form Notice, copies of relevant pleadings (the FAC, the Settlement Agreement, and copies of any orders issued by the Court in connection with the settlement), will have the capability for Settlement Class Members to submit change-of-address information, and will be updated on a regular basis throughout the settlement process.  (*Id.* ¶ 4.3.)  The Settlement Administrator will also maintain a toll-free telephone number for questions related to the settlement.  (*Id.* ¶ 4.4.)  These extensive efforts to provide notice to the Settlement Class are "the best notice that is practicable under the circumstances." Fed. R. Civ. P 23(c)(2)(B).  Working in conjunction with the Settlement Administrator, IntelliCorp will also comply with the notice

6

requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b). (Drake Decl., Ex. 1 ¶ 10.2.)

### C.  Opt-Outs and Objections.

The Long Form Notice will also inform all Settlement Class Members of their right to opt out of or object to the settlement and of the associated deadlines.  (Drake Decl., Ex. 1 at Ex. A.)  Settlement Class Members who choose to opt out must send a written notice to the Settlement Administrator stating the individual's name and address and desire to opt out of the settlement.  (*Id.* ¶ 5.1.)  To object, a Settlement Class Members must file a statement of objection with the Clerk of Court and concurrently mail a copy to the Settlement Administrator.  (*Id.* ¶ 5.3.)  The statement must state the case name and number; list the Class Member's name, address, phone; state the basis and explanation of the objection; be signed by the Settlement Class Member; and state whether the Settlement Class Member intends to appear at the final approval hearing, with or without counsel.  (*Id.*)

### D.  Attorneys' Fees, Costs, and Class Representative Service Award.

The Settlement Agreement contemplates Plaintiff's Counsel petitioning the Court for attorneys' fees in an amount not to exceed one-third of the combined total of the settlement fund and the Non-Monetary Relief Value,[4] as well as documented, customary costs incurred by Plaintiff's Counsel.  (*Id.* ¶ 3.4.)  Plaintiff's Counsel may also petition the Court for a $5,000 service payment for Plaintiff Sherri Legrand.  (*Id.* ¶ 3.3.)  Any approved awards will be deducted from the settlement fund prior to distribution to the Settlement Class Members.  Plaintiff's

---

[4] The Parties have monetized the non-monetary relief under the settlement for purposes of calculating the attorneys' fees Plaintiff's Counsel may request.  However, barring some exceptional circumstance arising between now and the deadline for Counsel's fee petition, Plaintiff's Counsel intends to seek only one-third of the cash value of the Settlement.  (Drake Decl. Ex. 1 ¶ 2.5.)

Counsel will formally petition the Court for these amounts fourteen (14) days prior to the Opt-Out Deadline and will post a copy of the motion papers on the Settlement Website so that Settlement Class Members are able to review them prior to the deadline to opt out or object to the settlement.  (*Id.* ¶ 10.3.)  None of these amounts were negotiated before the other settlement terms were agreed upon, and neither final approval, nor the size of the settlement fund, are contingent upon the full amount of any requested fees or service award being approved.

## ARGUMENT

Class action settlements must be approved by the court after a hearing is held and the court finds that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Before a final approval hearing may be held, the court must "preliminarily approve the proposed settlement," and "members of the class must be given notice."  *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565 (6th Cir. 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983)); *see also* Fed. R. Civ. P. 23(e)(1).  Preliminary approval is meant to "ascertain whether there is any reason to notify the class members of the proposed settlement," in order to allow class members the opportunity to opt out and/or object to the settlement, after which the court may proceed to the final approval hearing.  *In re Packaged Ice Antitrust Litig.*, No. 08-md-1952, 2010 WL 3070161, at *4-5 (E.D. Mich. Aug. 2, 2010).

For the reasons set forth below, the Court should: (1) preliminarily approve the Parties' proposed settlement, (2) certify the Settlement Class for settlement purposes only, (3) approve the class notice for distribution, (4) appoint Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel, and (5) set a date for the final approval hearing.

## I.     THE SETTLEMENT TERMS ARE FAIR, REASONABLE, AND ADEQUATE.

There is a strong "federal policy favoring settlement of class actions."  *Int'l Union,*

*United Auto., Aero., & Agr. Impl. Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) ("*Gen. Motors*").  A settlement should thus be preliminarily approved as long as it "is not the product of fraud or overreaching by, or collusion between, the negotiating parties and . . . the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am.*, 803 F.2d 878, 880 (6th Cir. 1986) (internal quotation marks omitted)).

In determining whether a proposed settlement agreement is "fair, reasonable, and adequate" so as to warrant final approval under Fed. R. Civ. P. 23(e)(2), a court may consider several factors: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Gen. Motors*, 497 F.3d at 631.  In the event a court finds that the settlement falls within the range of possible approval, notice is issued and a final approval hearing scheduled.  Under these factors, the Parties' settlement should be preliminarily approved.

   A. **The Proposed Settlement Was Reached After Exchange of Substantial Information, Motion Practice, and Arms-Length Negotiations Between Experienced Counsel.**

As set forth above, the Parties have undertaken significant efforts in the litigation and settlement of this matter.  These efforts include: (1) Plaintiff's Counsel investigating the claims; (2) meeting and communicating regularly with Plaintiff; (3) researching and drafting the complaint and FAC; (4) the Parties have engaged in discovery; (5) briefed a motion to dismiss and a motion to stay; (6) exchanged two detailed mediation briefs; (7) conducted third party discovery of the federal agencies that maintain Government Sanctions information; and (8)

prepared for and participated in two formal mediation sessions facilitated by third-party neutrals. Plaintiff also thoroughly analyzed IntelliCorp's class data, individually examining records for thousands of Settlement Class Members. All of this occurred before this settlement was reached. These circumstances entitle the settlement in this case to the presumption of fairness. *See Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (listing cases and noting that arms-length negotiations conducted by competent counsel leads to a presumption of fairness of a settlement); *Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."); *In Re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 351 (N.D. Ohio 2001) ("[W]hen a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair.") (citing *Williams*, 720 F.2d at 923). Additionally, attorneys' fees and a service payment for the Class Representative were not discussed or negotiated until all other material settlement terms had been agreed upon, eliminating the possibility of a trade-off between compensation for the Settlement Class and compensation for Plaintiff's Counsel or the Named Plaintiff. (Drake Decl., Ex. 1 ¶¶ 3.3, 3.4.)

Furthermore, the Parties here are represented by counsel who have significant experience in class action litigation and settlements, and in FCRA cases in particular. (*See* Part II.A.4, *infra*.) The judgment of the Plaintiff and her Counsel is entitled to deference. *See Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) ("[I]n deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference."), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia,*

*L.L.C.*, 636 F.3d 235 (6th Cir. 2011); *see also, e.g.*, *Int'l Union, United Auto., Aero., & Agr. Impl. Workers of Am. v. Ford Motor Co.*, 2008 WL 4104329, *26 (E.D. Mich. Aug. 29, 2008).

### B.  The Settlement Is Well Within the Range of Approval.

1.  <u>Recovery for the Class Is Substantial</u>.

The settlement is impressive when considering the range of possible recoveries for the Settlement Class, IntelliCorp's potential defenses, and the number of procedural hurdles between Plaintiff and a final judgment.  Plaintiff filed her case seeking statutory damages under the FCRA, which provides for statutory damages of between $100 and $1,000 for each willful violation.  15 U.S.C. § 1681n(a)(1).  Plaintiff did not seek actual damages.[5]  The FCRA itself does not provide any guidance to courts in choosing the appropriate recovery for a statutory violation, *see* 15 U.S.C. § 1681n(a)(1), but in determining the amount of statutory damages to impose pursuant to the FCRA, courts have looked to "the importance, and hence the value, of the rights and protections" at issue in the case.  *Ashby v. Farmers Ins. Co. of Or.*, 592 F. Supp. 2d 1307, 1318 (D. Or. 2008); *accord In re Farmers Ins. Co., Inc., FCRA Litig.*, 741 F. Supp. 2d 1211, 1224 (W.D. Ok. 2010).

Here, Settlement Class Members are likely to recover a considerable portion of what they could have recovered in litigation.  The settlement provides a gross per class member recovery of $229.  If all of Plaintiff's Counsel's requested fees and expenses are awarded, each class member can expect to receive a check for approximately $147.  Through the settlement, Settlement Class Members have avoided the substantial risks they faced, including the risk of a total loss wherein they would recover nothing.  A recovery of a meaningful percentage of the likely award if these

---

[5] To recover actual damages under the FCRA, damages must be caused by the FCRA violation itself, not merely by the report associated with the violation.  *See Bach v. First Union Nat. Bank*, 149 F. App'x 354, 361 (6th Cir. 2005) (evaluating "causal link" between violation and damages).

claims had proceeded all the way through final judgment is a significant result.  *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Plaintiff's Counsel have litigated numerous class action cases involving claims brought under the FCRA, speak nationally on the FCRA and class action litigation, and routinely track FCRA litigation around the country.  The recovery here is at the high end of settlements involving similar claims.  *See*, *e.g.*, *Henderson v. Acxiom Risk Mitig., Inc.*, No. 12-cv-589, ECF No. 117 (E.D. Va. Aug. 7, 2015) (final approval of settlement of §1681k(a) claim, among others, providing between $11.75 and $35.25 net per class member recovery); *Henderson v. AlliedBarton Sec. Srvcs., LLC*, No. 14-cv-82, ECF No. 63 (E.D. Va. June 22, 2015) (final approval of settlement of §1681k(a) claim, providing approximately $76 net per class member); *Roe v. IntelliCorp Records, Inc.*, No. 12-cv-2288, ECF No. 139 (N.D. Ohio June 5, 2014) (final approval of settlement of inaccurate reporting and § 1681ka claims, providing for $50 and $270 net per class member); *Ryals v. HireRight Solutions, Inc.*, No. 09-cv-625, ECF No. 127 (E.D. Va. Dec. 22, 2011) (final approval of settlement involving §§1681e(b) and 1681k(a) claims, providing $15 - $200 gross per class member recovery); *Speers v. Pre-Employ.com, Inc.*, No. 13-cv-1849, ECF No. 83 (D. Or. Feb. 10, 2016) (final approval of settlement of §1681k(a) claims, providing for $153 net per class member recovery).  Taken all together, the gross recovery, the per class member recovery, and the method of distributing the settlement proceeds are all fair and reasonable and warrant preliminary settlement approval.

The non-monetary benefits of the settlement are also significant.  IntelliCorp has agreed

to provide a free consumer report with updated Government Sanctions search results to Settlement Class Members and to use the review and verification procedures detailed above for future Government Sanctions hit records for the next five years. Even standing alone, this relief provides a substantial benefit to the Class, and one they would not have been able to achieve in litigation, because it is far broader than any injunctive relief that would have been available under the FCRA in adversarial litigation. Indeed, whether the FCRA allows for injunctive relief at all is an open question. *See Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 709 (6th Cir. 2009) (noting that "the answer to th[is] question is far from self-evident").

2. Plaintiff Faces Significant Risks in the Absence of Settlement.

The impressive nature of this recovery comes into even sharper focus when the risks of further litigation are considered. Plaintiff had yet to survive class certification or summary judgment on her claims against IntelliCorp. While Plaintiff is confident that these obstacles could have been overcome, each of these phases of litigation presents serious risks, which the settlement allows Plaintiff to avoid.

Plaintiff did not just face generic litigation risk. She faced specific risk on the issue of willfulness. The FCRA is not a strict liability statute. *Dalton v. Capital Associated Indus.*, 257 F.3d 409, 417 (4th Cir. 2001). A FCRA plaintiff can recover statutory damages only where the defendant has acted willfully. 15 U.S.C. §§ 1681n(a)(1), 1681o(a)(1). The Sixth Circuit has held that an inaccurate background check alone does not necessarily mean that a violation was willful. *Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 611 (6th Cir. 2016) (finding that consumer reporting agency did not willfully violate the FCRA when it issued an inaccurate background check). As set forth above, had this litigation continued, IntelliCorp would have contested the question of willfulness vigorously as it took measures to correct the issues with its

13

reports once it noticed higher dispute rates after the change to its new database. The difficulty Plaintiff and the Class would have faced in proving willfulness weighs in favor of settlement. *See Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 212 (E.D. Pa. 2011) (proving willfulness in FCRA case was "a high hurdle to clear," which was a factor weighing in favor of settlement approval); *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 253 (E.D. Pa. 2011) (that willfulness presented "considerable — albeit not insurmountable — risks" weighs in favor of settlement approval).

## II.  CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.

The Parties request that the Court certify the Settlement Class under Fed. R. Civ. P. 23 for settlement purposes only. Even a class certified for settlement purposes must satisfy the requirements for class certification pursuant to Rule 23, though the court "need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### A.  The Prerequisites of Rule 23(a) Are Met.

Under Rule 23(a), a class may be certified only when (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. The proposed Settlement Class meets these requirements.

#### 1.  The Proposed Settlement Class Meets the Numerosity Requirement.

Fed. R. Civ. P. 23(a)(1) requires a proposed class be "so numerous that joinder of all members is impracticable." The Rule does not set a specific threshold, but rather "requires

14

examination of the specific facts of each case and imposes no absolute limitations.  When class size reaches substantial proportions, however, the impracticability requirement is usually satisfied by the numbers alone."  *Rosiles-Perez v. Superior Forestry Serv., Inc.*, 250 F.R.D. 332, 338 (M.D. Tenn. 2008).  Here, the number of Settlement Class Members is approximately 4,791, easily satisfying numerosity.

2.    The Settlement Class Shares Common Questions of Law and Fact.

A proposed class satisfies the commonality requirement when "it is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (internal quotations and alterations omitted).  Plaintiff does not have to show that there are multiple legal or factual issues common to the Class; rather, the existence of one common issue is sufficient.  *Rosiles-Perez*, 250 F.R.D. at 339.  There are a number of common issues in this matter, including: (1) whether IntelliCorp used reasonable procedures to assure maximum possible accuracy in reporting Government Sanction information, (2) whether IntelliCorp used strict procedures to ensure that the Government Sanctions information was complete and up-to-date, and (3) whether any violations of the FCRA were willful.  As these questions can all be answered with common proof, commonality has been established, and courts have certified classes with similar claims. *See*, *e.g.*, *Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 422 (N.D. Cal. 2014) (certifying §1681e(b) class involving misreporting of consumers as being on government list); *Patel v. Trans Union, LLC*, 308 F.R.D. 292, 308 (N.D. Cal. 2015) (certifying similar class); *Roe*, ECF No. 139 (finding commonality for §§1681e(b) and 1681k(a) claims while certifying class for settlement purposes); *Souter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183 (E.D. Va. 2015) (certifying class relating to inaccurate reporting of disposition of court judgments).

15

3.  <u>The Named Plaintiff's Claims Are Typical.</u>

A claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In Re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)).  The Sixth Circuit has described the typicality requirement as follows: "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).  In this case, the Plaintiff has the same claims as the members of the Settlement Class, namely that IntelliCorp's alleged failure to follow reasonable procedures to assure maximum possible accuracy in its reports and maintain strict procedures to ensure that reports were complete and up to date lead to incomplete and inaccurate reporting of public record information which violated Plaintiff and Class Members' rights under the FCRA.

4.  <u>The Class Representative's Interests Are Aligned with Those of the Settlement Class, and the Class Representative Will Vigorously Represent the Class through Qualified Counsel.</u>

Courts in the Sixth Circuit consider two criteria for determining adequacy of a class representative: (1) the representative must share common interests with unnamed class members, and (2) it must be apparent that the class representative will vigorously represent those common interests through qualified counsel.  *Rosiles-Perez*, 250 F.R.D. at 342.  This requirement tests "the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977).

Plaintiff has been actively engaged in litigation.  She has provided counsel with relevant documents, stayed abreast of developments and settlement negotiations, and evaluated the

Settlement Agreement.  (Drake Decl. ¶ 6.)  She understands what it means to be a class representative and has put the interests of the Settlement Class first in making all decisions related to litigation and settlement.  (*Id.*)  Further, Plaintiff does not have any conflicts of interest that would compromise her representation of the Settlement Class.  (*Id.*)

Proposed Class Counsel are highly qualified.  Berger & Montague ("Berger") is experienced in complex class action litigation and consumer litigation in general.  (Drake Decl., Ex. 2.)  Berger was founded in 1970, and has been concentrated on representing plaintiffs in complex class actions ever since.  (*Id.*)  The firm has been recognized by courts for its skill and experience in handling major complex litigation.  (*Id.*)  Lead counsel from Berger, E. Michelle Drake, has worked extensively on FCRA class actions, and John G. Albanese, also from Berger, has concentrated his practice on FCRA litigation as well.  (*Id.*).

**B.  The Prerequisites of Rule 23(b) Are Met**

The Settlement Class also meets the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3).  In evaluating this prong, the court may consider class members' interests in prosecuting their claims individually, the extent and nature of litigation thus far, and the desirability of concentrating the litigation in the particular forum.  Fed. R. Civ. P. 23(b)(3)(A)-(C).  In the context of a class-wide settlement, the court need not consider whether the case, if tried, would present difficult management problems.  *Amchem*, 521 U.S. at 620.  The requirements are met here.

1.  Common Questions of Law or Fact Predominate.

When considering predominance, the core issue is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  Put differently, the focus of the predominance inquiry is whether class-wide questions are "[a]t the

heart of the litigation." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).  The Sixth Circuit has affirmed findings of predominance when "plaintiffs have raised common allegations which would likely allow the court to determine liability . . . for the class as a whole." *Olden v. LaFarge Corp.*, 383 F.3d 495, 508 (6th Cir. 2004).

Here, there are three class-wide issues that predominate over any individual concerns. First is the question of whether IntelliCorp violated the FCRA by failing to follow reasonable procedures to assure the maximum possible accuracy of the public record information contained in its consumer reports.  Second is whether IntelliCorp violated the FCRA by failing to maintain strict procedures designed to insure that reported public record information is complete and up to date.  Thirdly, the willfulness of IntelliCorp's conduct presents a critical common question. Because IntelliCorp is a single entity, which followed the same procedures with respect to every member of the Settlement Class, the answer to the question of whether its alleged violations were willful can be determined on a class-wide basis.  *See Chakejian*, 256 F.R.D. at 500 ("Thus, the inquiry is to [defendant's] state of mind in implementing its policies and procedures, not on the customer's particular interaction with the CRA . . . .").

## 2.  A Class Action is the Superior Vehicle for Adjudication.

To be certified, a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Again, in the settlement context, the court need not address manageability.  *Amchem*, 521 U.S. at 620.  Courts in this Circuit have found that the superiority requirement is met when "common issues will only have to be heard and decided once, thereby promoting judicial efficiency[, and s]eparate actions would run the risk of inconsistent judgments." *Rosiles-Perez*, 250 F.R.D. at 348.  In a matter such as this, where the claims of all Class Members are identical and are based on the same

common core of facts, but involve a modest amount of damages, it is clear that adjudicating this matter as a class action will achieve economies of time, effort, and expense, and promote uniformity of results.  *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 540 (6th Cir. 2012) ("[i]t is often the case that class action litigation grows out of systemic failures of administration, policy application, or records management that result in small monetary losses to large numbers of people.  To allow that same systemic failure to defeat class certification would undermine the very purpose of class action remedies.").

Plaintiff's Counsel is unaware of any other lawsuits against IntelliCorp relating to the misreporting of Government Sanctions information.  (Drake Decl. ¶ 7.)  Moreover, Plaintiff's lawsuit was filed in September 2015, which is nearly two years after the time that IntelliCorp ceased to use the SAM database.  Given that the FCRA has a two-year statute of limitations, 15 U.S.C. § 1681p, and that no lawsuits relating to IntelliCorp's reporting of Government Sanctions prior to Plaintiff's suit suggests that very few class members, if any, have significant monetary damages from IntelliCorp's conduct.  Further, in the event that a consumer does have significant monetary damages warranting an individual suit, they may opt-out and pursue litigation on their own.  *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("When a few class members' injuries prove to be substantial, they may opt out and litigate independently.").

III.    **THE COURT SHOULD APPROVE DISSEMINATION OF THE CLASS NOTICE.**

Attached to the Settlement Agreement the Parties have submitted their proposed notice. (Drake Decl., Ex. 1 at Ex. A.)  The proposed Notice includes all of the information required by Fed. R. Civ. P. 23(c)(2)(B).  The Notice informs Settlement Class Members of the terms of the settlement and their rights and deadlines in which to exercise them.  The Notice is written in plain English and is modeled after the Federal Judicial Center's class action model notice.  *See*

www.fjc.gov.  The Notice is "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Gen. Motors*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *see* Fed. R. Civ. P. 23(e)(1).  The Notice should be approved.

## CONCLUSION

Based on the foregoing, the Court should grant Plaintiff's Motion and enter the preliminary approval order.

Date: April 24, 2017

/s/E. Michelle Drake
BERGER & MONTAGUE, P.C.
E. Michelle Drake, MN Bar No. 0387366*
John G. Albanese, MN Bar No. 0395882*
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Telephone: 612-594-5999
Facsimile: 215-875-4604
emdrake@bm.net
jalbanese@bm.net

*admitted *pro hac vice*

Matthew A. Dooley, OH Bar No. 0081482
O'TOOLE, McLAUGHLIN, DOOLEY
& PECORA, CO., LPA
5455 Detroit Rd (Route 254)
Sheffield Village, OH 44054
Telephone: 440-930-4001
Facsimile: 440-934-7205
mdooley@omdplaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

This case has been assigned to the standard track and complies with Local Civil Rule 7.1(f)'s page limitations for standard cases.

Date: April 24, 2017                    /s/E. Michelle Drake
                                        BERGER & MONTAGUE, P.C.
                                        E. Michelle Drake, MN Bar No. 0387366*
                                        John G. Albanese, MN Bar No. 0395882*
                                        43 SE Main Street, Suite 505
                                        Minneapolis, MN 55414
                                        Telephone: 612-594-5999
                                        Facsimile: 215-875-4604
                                        emdrake@bm.net
                                        jalbanese@bm.net

                                        *admitted *pro hac vice*

                                        Matthew A. Dooley, OH Bar No. 0081482
                                        O'TOOLE, McLAUGHLIN, DOOLEY
                                        & PECORA, CO., LPA
                                        5455 Detroit Rd (Route 254)
                                        Sheffield Village, OH 44054
                                        Telephone: 440-930-4001
                                        Facsimile: 440-934-7205
                                        mdooley@omdplaw.com

                                        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2017, a copy of the foregoing MOTION was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

Date: April 24, 2017                    /s/E. Michelle Drake
                                        BERGER & MONTAGUE, P.C.
                                        E. Michelle Drake, MN Bar No. 0387366*
                                        John G. Albanese, MN Bar No. 0395882*
                                        43 SE Main Street, Suite 505
                                        Minneapolis, MN 55414
                                        Telephone: 612-594-5999
                                        Facsimile: 215-875-4604

emdrake@bm.net
jalbanese@bm.net

*admitted *pro hac vice*

Matthew A. Dooley, OH Bar No. 0081482
O'TOOLE, McLAUGHLIN, DOOLEY
& PECORA, CO., LPA
5455 Detroit Rd (Route 254)
Sheffield Village, OH 44054
Telephone: 440-930-4001
Facsimile: 440-934-7205
mdooley@omdplaw.com

*Attorneys for Plaintiff*